**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-11368

(Summary Calendar)

_____

GREGORY J WHITE,

                              Plaintiff - Appellant,

versus

BANK OF AMERICA CORPORATION; ET AL,

                              Defendants

BANK OF AMERICA CORPORATION;
BANK OF AMERICA N A

                              Defendants - Appellees.

Appeal from the United States District Court
For the Northern District of Texas
U.S.D.C. No. 3:99-CV-2329-G

July 11, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

---

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.

Gregory White appeals the district court's grant of summary judgment to defendant Bank of America, arguing that the district court misapplied the *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) standard to his Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* claim. We affirm.

NationsBanc Mortgage[1] employed White from August 12, 1996 until February 1, 1999. In March 1997, White was promoted to a branch manager position, and reported to Senior Vice President Terry Peterson. White did not have unilateral hiring and firing authority. Shortly after White was involved in the bank's hiring of a new account executive, Ellen Dinkins, Peterson instructed White that White was to seek Peterson's approval for all future employment decisions. Nevertheless, when Dinkins did not prove to be a good match with the bank, White indicated to Dinkins that perhaps she should resign, and that the bank would pay her through the end of her initial 90 day employment period. This promise prompted Peterson to again instruct White that all future employment decisions must be approved by him.

One month after the incident with Dinkins, White informed Peterson that he had been diagnosed with Hepatitis C and would be undergoing six months of treatment. White also informed the human resources department of his condition and asked about obtaining leave to take his treatments.

In January 1999, White contacted the bank's recruiting department to request that an offer of employment be extended to Vika Uhtafe for an account executive position, and the recruiting department complied. Peterson told White he was unhappy about the manner in which Uhtafe had

47.5.4.

[1]      NationsBanc is the predecessor in interest to appellee Bank of America.

been hired. Several days later, White contacted the recruiting department to extend an offer to Cheri Brooks, again without Peterson's authorization. On February 1, 1999, Peterson, in conjunction with other bank managers, made the decision to terminate White.

White filed suit in the district court, alleging *inter alia* disability discrimination under the ADA. White asserted that he is disabled within the meaning of the ADA because Hepatitis C significantly restricts a major life activity, namely, reproduction. White further alleged that his disability motivated his termination. The district court accepted White's argument that he is disabled, but granted summary judgment to the bank because White did not offer adequate evidence to refute the bank's legitimate, nondiscriminatory reason for his termination.

In reviewing a grant of summary judgment, we set forth the facts in a light most favorable to the non-moving party (here, White), drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is only proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). When, as here, there is no direct evidence of discrimination, a plaintiff must instead attempt to prove a prima facie case under the familiar scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applied most recently in *Reeves*, 530 U.S. at 147-48, 120 S.Ct. 2097. A prima facie case under the ADA is established when a plaintiff

proves that: (1) he belongs to the protected group; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated employees received more favorable treatment. *See McInnis v. Alamo Comm. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's employment action. *See id.* If the defendant clears this hurdle, the burden once again shifts to the plaintiff to show that the defendant's proffered reason is merely pretextual. *See id.*

We assume without deciding that White is disabled within the meaning of the ADA, and that White has therefore established a prima facie case of disability discrimination. Because the bank has articulated a legitimate, nondiscriminatory reason for White's termination—namely, insubordination—the burden shifts back to White to offer evidence that this reason is pretextual. White argues that the following pieces of summary judgment evidence establish that the bank's reason was pretextual: (1) the bank admitted that White did not have the unilateral authority to hire or terminate employees; (2) White did not extend the offer to Dinkins that set forth her compensation in the event of discharge; and (3) the bank did not follow its company-wide associate discipline program.

White's first argument—that the bank could not have fired him for insubordination because he lacked the authority to hire and fire—is circular. The record shows that Peterson warned White on three separate occasions that he was not to hire anyone without obtaining Peterson's authorization, but that despite this warning, White contacted the recruiting department to extend offers to two new account executives. Presumably, it is precisely because White lacked unilateral authority to hire and fire that he was required to gain Peterson's approval before taking these actions.

The record indicates that on the occasion of both Uhtafe's and Brooks' hiring, White contacted the recruiting department directly, without speaking to Peterson. Accordingly, White's lack of authority to hire and fire does not refute the bank's characterization of White as insubordinate.

White's second assertion—that he did not extend the compensation offer to Dinkins—is belied by the record. In his deposition, White testified that he outlined to the recruiting department what her compensation offer should be, and that he "might have" told her that she would be paid through the end of the year, approximately the end of her initial 90 day employment period.

Finally, White maintains that the bank did not follow a company policy of progressive discipline. Bank of America's Associate Handbook contains the following section on involuntary termination:

> In order for NationsBanc to conduct its business efficiently, all associates are expected to meet appropriate standards of performance, attendance, and behavior. In *most cases*, if you have a performance problem, your supervisor will give you constructive criticism and an opportunity to improve. A supervisor's corrective action *may* include an informal verbal warning as well as a written formal warning and a probationary warning period. However, if the problem continues, you may be terminated. (emphasis added)

As is clear from the emphasized language, the bank's progressive disciplinary system is discretionary, and White has come forth with no evidence that the policy was followed differently for other employees, but not for him. *See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 590 (5th Cir. 1998). Further, it is undisputed that White did receive verbal warnings from Peterson on three separate occasions prior to his termination.

Accordingly, the district court correctly applied the *Reeves* standard in determining that White failed to produce evidence that the bank's articulated reason for White's termination is pretextual. AFFIRMED.